For the reasons assigned, the judgment appealed from is affirmed.

(119 So. 33)

No. 28952.

## SCOTT v. RATCLIFF.

Jan. 18, 1928.  On the Merits, Oct. 29, 1928. Rehearing Denied Nov. 26, 1928.

Herndon & Herndon, of Shreveport, for appellant.

Edward Barnett, of Shreveport, for appellee.

On Motion to Dismiss Appeal.

ROGERS, J.  The plaintiff appealed from an adverse judgment by the district court to the Court of Appeal, Second Circuit. When the record was lodged in the appellate court, the appellee moved to dismiss the appeal, on the ground that the Supreme Court, and not the Court of Appeal, had appellate jurisdiction of the case.  The Court of Appeal (5 La. App. 412) found his contention to be correct, but refused to dismiss the appeal, ordering, in lieu thereof, that it be transferred to this court.  The Court of Appeals did not fix any delay in which the transfer should be made, and the appellee applied, subsequently, to have this done.  His application was denied.  After the lapse of about eight months from the date of such refusal, the appeal was lodged in this court. The appellee has moved to dismiss it here, on the ground that the transcript was not filed within a reasonable time.

The transfer of an appeal is authorized by Act 19 of 1912.  The statute does not, in terms, fix a return day or prescribe a time

within which the transcript must be filed in the court to which the case is transferred. It merely declares that the judges of either court shall regulate the costs incurred by the appellant and the proceedings to be had in such cases. De Brueys v. Burns, 144 La. 707, 81 So. 259. Nevertheless we think it was the intention of the Legislature, in not designating, arbitrarily, the delay within which the transfer of an appeal must be effectuated, to leave that question open for determination by the appellate court transferring the case. The transfer of an appeal is not made a matter of right, but is made, largely, a matter of discretion on the part of the court to which it has been erroneously taken. The court therefore, in ordering an appeal to be transferred, may, within its sound discretion, impose upon the appellant such conditions as it sees fit. One of the conditions which the court, in allowing the transfer of an appeal, should impose upon the appellant, is a limit of time within which he should file the record in the court to which the transfer is to be made. The delay should be longer or shorter, depending upon the nature and extent of the record. To hold otherwise would be to attribute to the statute a meaning that would not only not carry out its object, but produce consequences which to the ordinary intelligence are absurd.

In the case presently before us, the Court of Appeal should have fixed a time limit within which the transcript was to be filed in this court. The remedy of the appellee, upon the court's refusal of his request to do so, was to have applied to us for the appropriate relief. But he failed to make such application. We do not think the appellant should be made to suffer for the court's action, apparently acquiesced in by the appellee. Cf. De Brueys v. Burns, referred to supra.

For the reasons assigned, the motion to dismiss the appeal is denied.

### On the Merits.

BRUNOT, J. This case was appealed to the Court of Appeal, Second Circuit. That court found that the district court had held section 15 of Act 158 of 1898 to be unconstitutional, and, under the provisions of Act 19 of 1912, it transferred the case to this court. 5 La. App. 414.

This is a mandamus proceeding in which the plaintiff asserts the right to redeem certain property that was sold by the city tax collector of the city of Shreveport for the nonpayment of city taxes due thereon.

The record discloses that plaintiff acquired two lots of ground in the Ratcliff subdivision of the city of Shreveport in 1922. In 1924 these lots were advertised and sold for the nonpayment of the city taxes assessed against the property for the year 1923, and the defendant became the adjudicatee of the property at that sale. The tax deed was recorded June 3, 1924. On May 17, 1926, nearly two years after this tax deed was recorded, plaintiff made tender to the defendant of the price and cost paid by him for the property and proposed to redeem it. Plaintiff's proposal was rejected by defendant, and this suit followed.

The prayer of the petition is for an alternative writ of mandamus, a rule to show cause, etc., and, finally, for judgment ordering the defendant to deed the property to the plaintiff, or, upon his failure to do so, ordering that the recordation of the judgment stand as a deed to plaintiff and a redemption of the property.

Plaintiff bases his alleged right to redeem the property upon the provisions of section 15 of Act 158 of 1898, which is the charter of the city of Shreveport.

Defendant alleges that section 15 of Act 158 of 1898 is null and void, for the reason that it is repugnant to and in conflict with sections 11 and 14 of article 10 of the Constitution of 1921, and of article 233 of the Con-

stitutions ·of 1898 and 1913. Defendant also alleges, in the alternative and by way of reconvention, that plaintiff's property was sold and adjudicated to him by the sheriff of Caddo parish on July 7, 1924, for nonpayment of the state taxes assessed against it for the year 1923, and this tax deed was recorded July 11, 1924.

Section 15 of Act 158 of 1898, which provision plaintiff relies upon, follows:

"Sec. 15. Be it further enacted, etc., That all personal property seized or levied upon for non-payment of taxes or licenses due said city, shall be sold after ten days' advertisement, without appraisement and for cash, and all real estate shall likewise be sold without appraisement for cash after thirty days' advertisement in the manner provided by law. All the property (except personal property) sold for taxes, shall be liable to redemption by the owner, his heirs and representatives, for and during two years from the day of sale, by paying in cash to the purchaser or party holding under him, an amount being fifty per cent. over and above the amount of the taxes and all costs incurred by the sale, and also the amount of taxes paid since the sale."

In juxtaposition we quote the pertinent part of section 11, and section 14 of article 10 of the Constitution of 1921.

"Sec. 11. There shall be no forfeiture of property for the nonpayment of taxes, but at the expiration of the year in which said taxes are due, the collector shall, without suit, and after giving notice to the delinquent in the manner provided by law, advertise for sale in the official journal of the parish or municipality, provided there be an official journal in such parish or municipality, or if not, then, as is now or may be provided by law for sheriff's sales, the property on which the taxes are due in the manner provided for judicial sales, and on the day of sale he shall sell such portion of the property as the debtor shall point out; and in case the debtor shall not point out sufficient property, the collector shall, at once and without further delay, sell the least quantity of property which any bidder will buy for the amount of taxes, interest and costs. The sale shall be without appraisement and the property sold *shall be redeemable at any time during one year from date of recordation of the tax sale*, by paying the price given, including costs and twenty

per cent thereon. No judgment annulling a tax sale shall have effect until the price and all taxes and costs paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser; provided, this shall not apply to sales annulled on account of taxes having been paid prior to the date of sale. All deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales." (Italics by the court.)

"Sec. 14. All provisions of ·this Constitution regulating the collection of State taxes and tax sales shall apply to parish, district, municipal, board and ward taxes."

The two sections of article 10 of the Constitution of 1921 have been in effect since the adoption of that Constitution, and article 233 of the Constitution of 1898, which contains similar provisions, was in effect when Act 158 of 1898 was adopted.

The two sections of article 10 of the Constitution of 1921, quoted supra, are self-executory. In the case of State ex rel. Curtis v. Ross, 144 La. 901, 81 So. 387, this court said:

"If the framers of the Constitution had contented themselves with providing that the tax sale should be redeemable, and had said nothing as to the duration of the right to redeem, the provision would not have been self-executory, and the Legislature would have been called upon to fix the duration of the right; but, they having gone on and declared that the sale should be redeemable in the space of one year, the provision cannot be said not to fix the duration of the right of redemption, or, in other words, not to be self-executory."

In the Curtis Case the court was called upon to interpret and apply article 233 of the Constitution of 1898, but a reading of that article will show that it contains provisions similar to those of section 11 of article 10 of the Constitution of 1921.

▬ A careful review of the record in this case has led us to the conclusion that section 15 of Act 158 of 1898 is in irreconcilable conflict with the clear and unambiguous language of sections 11 and.14 of article 10

of the Constitution of 1921. The Constitution is the paramount law, to which all other laws must yield, and it is equally obligatory on the individual citizen and on every department of the government. When its language is clear and unmistakably expresses the intent of its framers, there is no occasion for interpretation. Under these circumstances, it is the duty of courts to apply its provisions literally. This we conceive to be our duty in this case. For these reasons, the judgment appealed from is affirmed at appellant's cost.